**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CARL GEE,

                              Plaintiff,

    - v -                                      Civ. No. 9:09-CV-1057
                                                        (MAD/RFT)

BRIAN FISCHER, *Comm'r of the Dep't of Corr. Servs.*;
MARK BRADT, *Superintendent of Elmira Corr. Facility*;
STEVEN WENDERLICH, *Deputy of Security at Elmira*
*Corr. Facility*; WILLIAM HOPKINS, *Deputy Superintendent*
*of Administrative Services at Elmira Corr. Facility*; NORMAN
BEZIO, *Coordinator of the Office of Special Housing/Inmate*
*Disciplinary Programs*; LIEUTENANT WILLIS, *Elmira Corr.*
*Facility*; CAPTAIN NOETH, *Elmira Corr. Facility*; P. GONYEA,
*Deputy Superintendent of Security at Cayuga Corr. Facility*;
CORCORAN, *Superintendent of Cayuga Corr. Facility*; LUCIEN
LECLAIRE, *Deputy Comm'r of DOCS*; R. RAYMOND, *Corr.*
*Officer at Cayuga Corr. Facility*,

                              Defendants.

**APPEARANCES:**                                 **OF COUNSEL:**

CARL GEE
Plaintiff, *Pro Se*
98-B-1658
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

HON. ERIC T. SCHNEIDERMAN                MEGAN M. BROWN, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Carl Gee brings this civil rights action, pursuant to 42 U.S.C. § 1983, claiming Defendants violated his due process rights during the course of three separate disciplinary hearings. On February 4, 2011, Defendants filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 35. Thereafter, on February 18, 2011, Plaintiff opposed Defendants' Motion and cross-moved for Summary Judgment. Dkt. No. 36. Defendants filed Opposition to Plaintiff's Cross-Motion on March 25, 2011. Dkt. No. 40. For the reasons that follow, it is hereby recommended that Defendants' Motion for Summary Judgment be **granted** and Plaintiff's Cross-Motion for Summary Judgment be **denied**.

## I. MATERIAL FACTS

In support of their request for summary judgment, Defendants submitted a Statement pursuant to the District's Local Rule 7.1(a)(3), setting forth the undisputed, material facts. Dkt. No. 35-3 [hereinafter "Defs.' 7.1 Statement"]. No where in his Cross-Motion/Opposition does Plaintiff specifically respond to this Statement. *See* Dkt. No. 36. Instead, and in accordance with his responsibility in cross-moving, he submits his own "Statement of Undisputed Facts" (Dkt. No. 36 at pp. 5-9),[1] which Defendants respond (Dkt. No. 40-1). In light of his *pro se* status, the Court has reviewed both Statement of Facts and will utilize the parties' full submissions in determining, as to which facts are material to this action, whether the parties agree or disagree. Unless otherwise noted, the following material facts are well supported and not controverted.[2]

---

[1] All page references to Plaintiff's Cross-Motion/Opposition are to the page numbers automatically assigned by the Court's Case Management Electronic Case Filing System.

[2] Not only do the parties agree on most of the material facts, but in cross-moving for summary judgment, Plaintiff relies heavily on the Exhibits provided by the Defendants. The disagreement amongst the parties is relegated
(continued...)

This civil rights action concerns three separate Disciplinary Hearings Plaintiff received as a result of four Misbehavior Reports[3] he was issued while incarcerated at Elmira and Cayuga Correctional Facilities. Plaintiff's entire Complaint revolves around the alleged due process protections he claims to have been denied during each of these Hearings.

March 13, 2009 Disciplinary Hearing – Elmira Correctional Facility

On March 10, 2009, Fred Felko[4] issued Plaintiff a Misbehavior Report for failing to obey a direct order, in contravention of Prison Rule 106.10. Dkt. No. 35-4, Megan M. Brown, Esq., Affirm., dated Feb. 4, 2011, Ex. A, Elmira Tier II Hr'g Packet (docketed as Dkt. No. 35-5) at p. 6.[5] Plaintiff received a copy of that Report on March 11, 2009. *Id*. at p. 7. Defendant Lieutenant Willis presided as the Hearing Officer over the subsequent Tier II Disciplinary Hearing, which commenced on March 13, 2009 and concluded on March 18, 2009. *Id*. at p. 3. During the course of the Hearing, Defendant Willis denied Plaintiff's request to call as witnesses Defendant Superintendent Bradt and Mr. Chamberlain because neither individual was at the alleged incident nor had any direct knowledge of Plaintiff's alleged refusal to obey a direct order; however, he allowed Plaintiff to call Ms. Kent and Mr. Felko. *Id*. at pp. 5 & 8. At the conclusion of the Hearing, during which Plaintiff pled "not guilty," Defendant Willis found Plaintiff guilty of the charge and sentenced him to fifteen days keeplock and concomitant loss of privileges, such as commissary and phones. *Id*. at p. 3.

Plaintiff timely appealed the Hearing disposition, claiming that Defendant Willis was biased,

---

[2](...continued)
to whether those undisputed material facts amount to constitutional violations.

[3] As explained below, two of the Misbehavior Reports were consolidated into one Disciplinary Hearing.

[4] Mr. Felko is not named as a defendant in this action.

[5] For ease of reference, page number citations for Defendants' Exhibits refer to the page numbering automatically assigned by the Court's Case Management Electronic Case Filing System.

denied Plaintiff the opportunity to present a defense, and denied him the opportunity to call witnesses. *Id*. at p. 2. Defendant Bradt forwarded the appeal to Defendant Noeth, who modified the sentence to fourteen days keeplock.[6] *Id*.

May 28, 2009 Disciplinary Hearing – Elmira Correctional Facility

On May 20, 2009, C.O. P. Hetherington[7] issued Plaintiff a Misbehavior Report, charging him with violating Prison Rule 113.24, which prohibits inmates from using controlled substances. Dkt. No. 35-7, Norman Bezio Decl., dated Feb. 2, 2011, Ex. A, Elmira Tier III Hr'g Packet (docketed as Dkt. No. 35-8) at p. 5. According to the Misbehavior Report, Plaintiff was suspected of using drugs and was directed to provide a urine sample; that sample tested positive for "THC 50 (marijuana)." *Id*. Plaintiff received a copy of that Report on May 21, 2009, and provided a list of assistants to aid him in the disciplinary process; one of his selected assistants was assigned to him. *Id*. at pp. 6-7. On May 28, 2009, a Tier III Hearing commenced with Defendant William Hopkins[8] presiding as Hearing Officer. *Id*., Ex. B, Tier III Hr'g Tr. (docketed a Dkt. No. 35-9) at p. 3. During the Hearing, Plaintiff pled guilty, explaining that his mother was dying from cancer and that he gave up. *Id*. at p. 4. At the conclusion of the brief Hearing, Defendant Hopkins sentenced Plaintiff to six months in a special housing unit (SHU) with accompanying loss of privileges and six months

---

[6] In his Complaint, Plaintiff asserts that Defendant Wenderlich also played a role in affirming the appeal. Compl. at ¶ 22. Attached to his Cross-Motion is a Memorandum, dated March 23, 2009, addressed to Plaintiff Gee, purportedly from Defendant Wenderlich, which chastises Plaintiff for exaggerating points raised in his letter, dated March 16, 2009, to the Superintendent. Pl.'s Cross-Motion, Ex. 2, at p. 60. While this letter references some "recent Tier II Disciplinary matter," which disposition appears to be affirmed by Wenderlich, it is inconceivable that this letter could be referencing the disciplinary sentence at issue in this litigation which at that point had yet to occur. *See* Brown Decl., Ex. A at p. 3 (indicating that Defendant Willis's Hearing ended on March 18, 2009).

[7] C.O. P. Hetherington is not named as a defendant in this action.

[8] Mr. Hopkins was designated by Defendant Superintendent Defendant Bradt to conduct the Hearing pursuant to N.Y. COMP. CODES R. & REGS. tit. 7, § 254.1. Bezio Decl., Exs. A at p. 17 & B at p. 3

recommended loss of good time. *Id.*, Exs. A at p. 2 & Ex. B at p. 4. In rendering that sentence, Defendant Hopkins noted that it was Plaintiff's fourth drug related charge. *Id.*, Ex. B at p. 4.

On June 9, 2009, Plaintiff sent a letter to Defendant Commissioner Brian Fischer regarding an appeal of the Tier III Hearing disposition. *Id.*, Ex. D, Pl.'s Appeal (docketed as Dkt. No. 35-11) at pp. 3-10. In response, Defendant Lucien LeClaire, Deputy Commissioner, forwarded the letter to the Office of Special Housing/Inmate Disciplinary Programs to be accepted as an appeal of the Tier III Hearing. *Id.* at p. 1. In his appeal letter, Plaintiff claims that just prior to the Hearing, he was placed in SHU and deprived of his personal belongings, including his legal papers. *Id.* at p. 3. He asserts that at the Hearing, he was not allowed to have his paperwork and was "forced to plead guilty with an explanation." *Id.* He further asserts in his appeal that he was set up and that his urine was tampered with and that the determination was therefore not supported by substantial evidence. *Id.* at pp. 5 & 7. None of the issues raised in his appeal were raised during the Hearing. On July 7, 2009, Defendant Bezio affirmed the Tier III Hearing disposition. *Id.*, Ex. E, Appeal Determination (docketed as Dkt. No. 35-12).

July 15, 2009 Disciplinary Hearing – Cayuga Correctional Facility

On June 24, 2009, at approximately 5:05 p.m., Plaintiff was issued a Misbehavior Report by Defendant R. Raymond for refusing a direct order (in violation of Prison Rule 106.10), failing to dispose of plasticware (in violation of Prison Rule 124.12), and for failing to comply with messhall serving policies (in violation of Prison Rule 124.16). Bezio Decl., Ex. G, Tier III Hr'g Packet (docketed as Dkt. No. 35-14) at p. 11. According to the Misbehavior Report, Plaintiff also refused a direct order from Sergeant Emerson.[9] *Id.* Approximately one hour later, Sergeant Emerson issued

---

[9] Emerson is not named as a defendant in this action.

Plaintiff a separate Misbehavior Report for failing to obey a direct order (in violation of Prison Rule 106.10). *Id*. at p. 10. According to the second Misbehavior Report, Plaintiff had been placed on a suicide watch by "OMH" and needed to be moved to a special watch cell, however, he refused to be moved. *Id*. at p. 10. He finally complied about forty-five minutes later after being told an extraction team would be used. *Id*. On June 26, 2009, Gee received copies of the Misbehavior Reports and provided a list of assistants to aid him in the disciplinary process. An assistant was assigned to him, although such assistant was not amongst the choices designated by Plaintiff. *Id*. at pp. 2, 4, 13, & 14. Plaintiff did not request any witnesses to appear on his behalf; he only sought to present the video tape of the incident, however, it had already been recycled and thus unavailable. *Id*. at p. 15. The two Misbehavior Reports were combined into one Tier III Hearing, with Defendant P. Gonyea presiding as Hearing Officer. The Hearing commenced on July 8, 2009,[10] and concluded on July 15, 2009. *Id*., Ex. H, Hr'g Tr. (docketed as Dkt. No. 35-15). According to the Hearing Transcript, and supporting documentation, Plaintiff refused to attend the Hearing and refused to sign a waiver of his right to be present. *Id*., Exs. G at p. 12 & H at pp. 3-4. Defendant Gonyea continued with the Hearing in Plaintiff's absence and entered "not guilty" pleas to all the charges on his behalf. *See generally id*., Ex. H. Because of the circumstances regarding one of the Misbehavior Reports, wherein Gee was placed on a suicide watch, Defendant Gonyea obtained testimony from Mental Health personnel to determine Gee's mental health status at the time of the incidents and whether it had any impact on the incident or his understanding of the proceedings; a second extension was granted in order to obtain that testimony. *Id*. at pp. 10-11.

At the conclusion of the Hearing, based upon the evidence before him, Defendant Gonyea

---

[10] An extension of time in which to hold the Hearing was requested on June 25, 2009, because Plaintiff was on special watch; that request was granted. *See* Bezio Decl., Exs. G at pp. 6-9 & H at p. 6.

found that Plaintiff's mental health status was not a contributing or mitigating factor and found him guilty of all charges. *Id*. at pp. 12-13. Defendant Gonyea sentenced Plaintiff to six months in SHU, with corresponding loss of privileges; two of the months were suspended for a three-month period. *Id*. at p. 14; *see also* Ex. H at p. 2. In his appeal, dated July 19, 2009, Plaintiff claims that he never received a copy of the Misbehavior Reports nor was he advised of the consequences of his failure to attend the Hearing. *Id*., Ex. J, Pl.'s Appeal (docketed as Dkt. No. 35-16). On August 19, 2009, on behalf of the Commissioner, Defendant Bezio reviewed the appeal and affirmed the Hearing disposition. *Id*., Ex. J, Appeal Determination (docketed as Dkt. No. 35-17). According to his Disciplinary History Record, the actual time Plaintiff served for this disposition was seventy-eight days, from November 20, 2009 until February 6, 2009. *Id*., Ex. F, Inmate Disciplinary History (docketed as Dkt. No. 35-13).

## II. DISCUSSION

### A. Standard of Review

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless

properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*,

*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

When considering cross-motions for summary judgment, a court "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d at 1461.

### B.  Due Process Claims

Plaintiff states that his due process rights were violated at each of his Disciplinary Hearings. To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are typically derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id*.

With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners.'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)). The Due Process clause does not protect against "every change in the conditions of

confinement having a substantial adverse impact" on inmates if those changes are "within the normal limits or range of custody which the conviction has authorized the state to impose." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). Instead, the Due Process Clause protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner." *Id*. at 484 (quoted in *Arce v. Walker*, 139 F.3d at 333).

State statutes and regulations may also confer liberty interests on prisoners. *Arce v. Walker*, 139 F.3d at 334 (citing *Kentucky Dep't of Corr.*, 490 U.S. at 460). Prior to the Supreme Court's decision in *Sandin v. Connor*, 515 U.S. 472 (1995), the struggle to define the contours of state created liberty interests rested with the district courts, who would engage in the arduous task of scrutinizing state statutes and administrative regulations to determine whether the state had "gone beyond issuing mere procedural guidelines and had used 'language of an unmistakenly mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" *Lee v. Coughlin*, 26 F. Supp. 2d 615, 629 (S.D.N.Y. 1998) (quoting *Hewitt v. Helms*, 459 U.S. at 471-72); *see also Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999). Such methodology, according to the *Sandin* Court, produced two undesirable effects:

> First, it create[d] incentives for States to codify prison management procedures in the interest of uniform treatment. . . . Second, the *Hewitt* approach [] led to the involvement of federal courts in the day to day management of prisons, often squandering judicial resources with little offsetting benefit to anyone.

*Sandin v. Connor*, 515 U.S. at 482.

Recognizing the fallacy of such methodology, the Supreme Court held that states may still create liberty interests for inmates in remaining free from solitary confinement, thereby requiring some process precede the segregated confinement, however, such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation

to the ordinary incidents of prison life." *Id*. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*, 515 U.S. at 484); *Welch v. Bartlett*, 196 F.3d at 392.  Thus, a prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed such an atypical and significant hardship.

The Court will consider each of the Disciplinary Hearings *seriatim*.

*1. March 13, 2009 Disciplinary Hearing – Elmira Correctional Facility*

As noted above, after finding Plaintiff guilty of failing to obey a direct order, Defendant Willis sentenced Plaintiff to fifteen days keeplock, with loss of privileges.  On appeal, that disposition was reduced by one day, and all parties agree that Plaintiff served the entirety of the reduced sentence.  Plaintiff asserts that his due process rights were violated during this Hearing and seeks to hold Defendants Willis, Wenderlich,[11] Noeth, and Bradt accountable.  While Plaintiff complains of the various procedural protections he was denied, which resulted in the imposition of a fourteen-day keeplock sentence with loss of privileges, he does not allege any additional aggravating circumstance present during that confinement.[12]

Because Plaintiff has not raised a deprivation of his most basic liberty interests, and because the conditions surrounding the fourteen-day keeplock confinement did not exceed his sentence in an unexpected manner, no liberty interest has arisen under the Due Process Clause itself.  *See Dawes*

---

[11] *See supra* Note 6 regarding Plaintiff's potentially misplaced allegations against Defendant Wenderlich.

[12] As explained in his Cross-Motion, Plaintiff's main gripe with this Disciplinary Hearing is the fact that he was not allowed to call witnesses whom he claims would contest the veracity of the Misbehavior Report, or at least lend some support to his theory that the Report was issued for unspecified discriminatory reasons and as retaliation for complaints filed by Plaintiff with the proposed witnesses. Dkt. No. 36, Pl.'s Cross-Mot. at p. 12.  Plaintiff does not extrapolate further on the purported connection between his alleged complaints and the Misbehavior Report.  Without more, and especially in light of the fact that the author of the Misbehavior Report is not named as a Defendant, we do not construe Plaintiff's argument in his Cross-Motion to be raising a claim of retaliation.

*v. Dibiase*, 1997 WL 376043, at *4 (N.D.N.Y. July 3, 1997) (citing *Washington v. Harper*, 494 U.S. 210 (1990) & *Vitek v. Jones*, 445 U.S. 480 (1980), for the proposition that the Due Process Clause will apply by its own force only for deprivations much more severe than solitary confinement for a year).

As for a state created liberty interest, the issue for the Court is whether this sentence resulted in an atypical and significant hardship in relation to the ordinary incidents of prison life. This inquiry "turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker*, 139 F.3d at 336 (emphasis added) (citations omitted). As noted above, no where in his Complaint or Cross-Motion does he describe the conditions of his keeplock confinement. Thus, this Court is left only to determine whether the duration of the confinement alone constituted an atypical and significant hardship. On this issue, courts in this Circuit have held that relatively short sentences, absent additional egregious circumstances, are not "atypical and significant" so as to create a liberty interest. *See Rivera v. Goord,* 2008 WL 5378372, at *2-3 (N.D.N.Y. Dec. 22, 2008) (holding that forty days of room restriction "did not constitute a constitutionally cognizable liberty deprivation"); *Moore v. Kennedy*, 1996 WL 452279, at *2 (S.D.N.Y. Aug. 8, 1996) (finding that twenty-six days of keeplock and loss of privileges did not impose an atypical or significant hardship); *Uzzell v. Scully*, 893 F. Supp. 259, 263 (S.D.N.Y. 1995) (forty-five days of keeplock is not atypical and significant).

Because Plaintiff's fourteen-day keeplock confinement did not implicate a liberty interest, we need not examine the process he received prior to such confinement.[13] Accordingly, we

---

[13] As an aside, we note that were we to examine the procedural protections afforded to Plaintiff, we would find that all were in accordance with the dictates of *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), in that the record clearly reflects that he was provided with (1) advanced written notice of the charges against him; (2) the opportunity to appear
(continued...)

recommend that Defendants' Motion for Summary Judgment be **granted** as to this claim and Plaintiff's Cross-Motion for Summary Judgment be **denied** as to this claim. Because these are the only claims asserted against Defendants Willis, Wenderlich, Noeth, and Bradt, we also recommend they be dismissed from this action.

*2. May 28, 2009 Disciplinary Hearing – Elmira Correctional Facility*

Next, Plaintiff complains of the due process violations he alleges occurred in connection with the May 28, 2009 Tier III Disciplinary Hearing conducted by Defendant Hopkins. During this Hearing, Plaintiff pled guilty to the charge of using a controlled substance and was sentenced to six months in SHU, with corresponding loss of privileges, and six months recommended loss of good time. In bringing this claim, Plaintiff seeks to hold Defendants Hopkins, Bezio, Fischer, and LeClaire accountable for the purported constitutional violations.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a § 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction or sentence, unless the conviction had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal *habeas* court. *Heck v. Humphrey*, 512 U.S. at 486-88. The *Heck* Court directed that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the

---

[13](...continued)
at the hearing, call witnesses, and present rebuttal evidence; and (3) a written statement as to the evidence relied upon and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. at 564-66; *see also Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986); *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) (quoting *Hewitt v. Helms*, 459 U.S. at 476). The fact that the Hearing Officer denied Plaintiff the opportunity to present two of his witnesses because their testimony was deemed to be irrelevant does not change this analysis since irrelevancy is a valid grounds for the denial of a witness. *Wolff v. McDonnell*, 418 U.S. at 566-67.

complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487.

The Supreme Court later extended their *Heck* ruling to situations where inmates challenge disciplinary proceedings that resulted in a loss of good time credits wherein the validity of a disciplinary or administrative sanction wold affect the length of plaintiff's confinement. *See Edwards v. Balisok*, 520 U.S. 641 (1997). However, the Second Circuit has clarified that where the challenged proceeding does not affect the overall length of the plaintiff's confinement, a §1983 action is not barred by *Heck* or *Edwards*. *Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir. 1999). More recently, both the Supreme Court and the Second Circuit have further clarified that *Heck* and *Edwards* do not stand as a total bar to prisoner § 1983 suits merely because a disciplinary sentence resulted in a loss of good time credit; under certain circumstances, an inmate is permitted to attack the conditions of such confinement without necessarily invalidating the determination that affected the length of the prisoner's confinement. *Muhammed v. Close*, 540 U.S. 749, 751-52 (2004) (clarifying that *Heck* does not present a total bar to a § 1983 claim where the prisoner's challenge "threatens no consequence for his conviction or the duration of his sentence'); *Peralta v. Vasquez*, 467 F.3d 98, 104-05 (2d Cir. 2006) (holding that a prisoner subjected to a mixed discplinary sanction may challenge those portions of the sanction pertaining only to the conditions of the confinement, and not those that affect the duration of the confinement, so long as the prisoner is willing to go on record forgoing forever any challenge he may have to the portion of the sentence affecting the duration of his confinement); *cf. Wilkinson v. Dotson*, 544 U.S. 74, 81-84 (2005) (noting in the parole context that a prisoner may challenge the parole procedures used to deny eligibility and suitability because success on such claim will not affect the prisoner's sentence through mandated

release and would only entitle him to another parole hearing).

There is no indication in the Complaint that Plaintiff in any way is challenging solely the conditions of his disciplinary confinement. In his Cross-Motion, he raises for the first time the issue of there being feces on his SHU cell walls. But even there, he does not seem to attribute this condition to any Defendant in particular, nor does he make clear that he is challenging the conditions of his SHU confinement. In any event, the Court notes that opposition papers are not the proper vehicle to instill new causes of action or add new defendants. *See In re Private Capital Partners, Inc.*, 139 B.R. 120, 124-25 (Bankr. S.D.N.Y. 1992) (citing cases for the proposition that a plaintiff's attempt to amend his complaint by instituting new causes of action in his opposition papers to defendants' dispositive motion is in direct contravention of and amounted to an attempt to circumvent the Federal Rules of Civil Procedure, namely Rule 15(a)); *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997)) ("'[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'") (citation omitted); *Harvey v. New York City Police Dep't*, 1997 WL 292112, at *2 n.2 (S.D.N.Y. June 3, 1997) ("To the extent plaintiff attempts to assert new claims in his opposition papers to defendants' motion, . . . the Court finds that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment' and accordingly disregards such claims.") (citation omitted); *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 691 (S.D.N.Y. 1999). While a complaint need not correctly plead every legal theory supporting a claim, "a plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts . . . have consistently ruled that it is inappropriate to

raise new claims for the first time in submissions in opposition to summary judgment." *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 406 (S.D.N.Y. 2006) (citations omitted).

Accordingly, the Court finds that Plaintiff's due process claims resulting in mixed sanctions are barred by the Supreme Court decisions of *Heck* and *Edwards* and are not cognizable in this § 1983 action.[14] Thus, the Court recommends **granting** Defendants' Motion for Summary Judgment on this claim and **denying** Plaintiff's Cross-Motion for Summary Judgment. As these recommendations dispose of the only claim stated against Defendant Hopkins, we further recommend that he be dismissed from this action.

### *3. July 15, 2009 Disciplinary Hearing – Cayuga Correctional Facility*

Lastly, Plaintiff claims that he was denied due process in connection with the Tier III Disciplinary Hearing he received at Cayuga on July 15, 2009. At the conclusion of that Hearing, which was conducted in Plaintiff's absence, Defendant Gonyea sentenced Plaintiff to six months in SHU, with corresponding loss of privileges, wherein two months were suspended for a three-month period. According to Plaintiff's Disciplinary Report, he served a total of seventy-eight days for that sentence. Plaintiff seeks to hold Defendants Raymond, Gonyea, Fischer, LeClaire, Corcoran, and Bezio liable for these alleged due process violations.

Once again, Plaintiff alleges no facts in his Complaint, nor makes any argument in his Cross-Motion, pertaining to the conditions he endured in SHU during those seventy-eight days. Thus, the

---

[14] As with the prior claim, even if Plaintiff's due process claim was cognizable, and assuming he has a liberty interest, he received all the process he was due at the Disciplinary Hearing in that, as clearly reflected in the record, he was afforded (1) advanced written notice of the charges against him; (2) the opportunity to appear at the hearing, call witnesses, and present rebuttal evidence; and (3) a written statement as to the evidence relied upon and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. at 564-66. During this particular Hearing, Plaintiff was informed of, but waived, his right to present a defense. At no time did he alert the Hearing Officer to his plight regarding the deprivation of legal papers. Instead, after being informed of his right to plead guilty or not guilty, he willingly chose the latter.

only criteria by which this Court can assess whether a liberty interest was implicated is the duration of the sentence itself. In this regard, while the Second Circuit cautions that there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard, *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999); *see also Ayers v. Ryan*, 152 F.3d 77, 83 (2d Cir. 1998) ("Whether or not a period of disciplinary confinement amounts to an atypical and significant hardship is a fact-intensive inquiry[.]"), they have nevertheless provided guidelines for use by district courts in assessing whether a prisoner's liberty interest was infringed. Confinements for a period of less than 101 days under normal SHU conditions would not constitute an atypical and significant hardship. *See Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000). Comparatively, segregative sentences of intermediate duration, between 101-305 days, are deemed to be "relatively long" and therefore necessitate "specific articulation of fact findings before the district court could properly term the confinement atypical or insignificant." *Sims v. Artuz*, 230 F.3d 14, 22, (2d Cir. 2000). The Second Circuit further explained that "[d]isputes about conditions may not be resolved on summary judgment, . . . but where the conditions are undisputed, the *Sandin* issue should be resolved by the court as a matter of law[.]" *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004) (internal citations omitted).

Here there is no dispute as to the conditions of Plaintiff's seventy-eight day confinement in SHU. In fact, despite being alerted to this *Sandin* issue in the Defendants' Motion for Summary Judgment, Plaintiff makes no effort to elaborate upon the specific conditions he endured during his SHU confinement. In the absence of a genuine issue of material fact, we find that Plaintiff's seventy-eight SHU confinement was not atypical or significant such that no liberty interest was implicated. Accordingly, we recommend **granting** Defendants' Motion for Summary Judgment on

this claim and **denying** Plaintiff's Cross-Motion for Summary Judgment. Accordingly, Defendants Raymond, Gonyea, and Bezio should be dismissed from this action.

### C. Other Claims

In his Complaint, Plaintiff alleges that Defendant Raymond refused to give Plaintiff a non-pork alternative dinner and threatened to or repeatedly filed misbehavior reports. Plaintiff alleges that he filed a complaint with Defendant Fischer about Raymond's conduct and Defendant Fischer assigned Defendant LeClaire to investigate. In turn, the investigation was ultimately assigned to Defendant Corcoran who found that Plaintiff had received a misbehavior report. Compl. at ¶¶ 39-41. These paragraphs are not only confusing, but utterly bereft of enough facts that would allow this Court to assess how these actions amounted to a constitutional violation. Perhaps this claim is merely related to the two Misbehavior Reports Plaintiff received on June 24, 2009, while at Cayuga, but again, it is unclear whether Plaintiff intended to assert a separate cause of action. He does not expand upon such claim in his Cross-Motion, thus, to the extent he ever intended to have the Court address it, we deem it abandoned and such claim against Defendants Fischer, LeClaire, and Corcoran should be **dismissed**.

Lastly, it appears that in his Complaint, Plaintiff asserts that while at Cayuga, he was denied access to the courts when he did not receive copies of legal documents he had requested from the law library, thus inhibiting his ability to bring a § 1983 action regarding the above denial of a non-pork dinner alternative. Compl. at ¶¶ 47-49. He does not say which individual denied him access to the courts, but he alleges that he complained to Defendants Fischer and Corcoran, who failed to respond. *Id*. at ¶ 50.

The Second Circuit has held that "personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1948 (2009). "It is now well-settled that the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement." *Silvagnoli v. Fischer*, 2010 WL 1063849, at *8 (N.D.N.Y. Mar. 1, 2010) (citing *Smart v. Goord*, 441 F. Supp. 2d 631, 642-43 (S.D.N.Y. 2006)). "The same is true if the only involvement of the supervisory official is to refer the inmate's complaint to the appropriate staff for investigation." *Id.* (citing *Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs.*, 491 F. Supp. 2d 342, 347 (W.D.N.Y. 2007). Thus, without more, Plaintiff has failed to allege the personal involvement of any particular Defendant regarding his fallible denial of access to the courts claim.

Accordingly, Defendants' Motion for Summary Judgment should be **granted** as to these residual claims, and Plaintiff's Cross-Motion for Summary Judgment should be **denied**. Thus, with the dismissal of these final claims, Defendants Fischer, Corcoran, and LeClaire should be dismissed from this action.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 35) be

**GRANTED**; Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 36) be **DENIED**; and this case be **DISMISSED** in its entirety; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   September 21, 2011
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge